## TEXAS EMPLOYERS' INS. ASS'N v. MANLEY.

### No. 2432.

Court of Civil Appeals of Texas. Beaumont.

Oct. 11, 1933.

Rehearing Denied Oct. 18, 1933.

Seale & Thompson, of Nacogdoches, and Lawther, Cox & Cramer, of Dallas, for plaintiff in error.

R. C. Musslewhite, of Lufkin, and Hodges & Greve, of Nacogdoches, for defendant in error.

WALKER, Chief Justice.

This appeal is from a judgment of the district court of Nacogdoches county, awarding defendant in error, B. M. Manley, compensation against plaintiff in error, Texas Employers' Insurance Association, as for total permanent incapacity for 401 weeks at $13.85 a week, to be paid in a lump sum on discount at 6 per cent. The only assignment of error is "the trial court erred in overruling the motion of plaintiff in error to grant it a new trial because of newly discovered evidence."

The assignment does not show error. No point is made that defendant in error was not injured at the time and place and in the manner claimed by him. Dr. J. P. Hunter and Dr. L. H. Denman testified that in their judgment defendant in error was totally incapacitated to perform labor as a result of the injuries upon which he based his cause of action. The testimony of defendant in error was to the effect that he was totally incapacitated to perform labor. Plaintiff in error offered only expert witnesses, and their testimony strongly corroborated the testimony of Dr. Hunter and Dr. Denman.

The motion for new trial was based upon affidavits of the following witnesses: (a) B. W. Goodwin testified by affidavit that he lived about half a mile from defendant in error; that he saw defendant in error from time to time, but had not been told of the injury sued for; during the year 1931, subsequent to the date of the claimed injury, affiant saw defendant in error walk for about a mile without limping; that he saw defendant in error working in his field cutting "sprouts and brush ahead of the plow and doing a day's work." (b) Tom Goodwin testified by affidavit that he had known defendant in error all his life; that subsequent to the injury sued for he saw him at a dance; that he saw him walking many times; that he had never seen him limp; that he walked home with defendant in error from a dance; that at that time defendant in error had a fight with another man, and after the fight they "got into a rassle and plaintiff threw the other man to the ground and pinned and held him there"; that he had never heard defendant in error complain of ever having been injured. (c) B. C. Goodwin testified by affidavit that he had known defendant in error at least ten years; that subsequent to the date the defendant in error claimed he was injured he saw him walking around in his field with an ax; that he saw him at a dance; that he danced four or five sets; that afterwards he saw him at another dance, where he danced two or three sets; that during this time defendant in error did not limp and did not stoop; that he had never seen him limp or stoop, and did not know until about two weeks before the date of his affidavit that defendant in error claimed he had been injured; that at a dance two or three weeks before the date of the affidavit defendant in error told him he never intended to work any more. (d) J. D. Maples testified by affidavit that he had known defendant in error about ten years, lived about half a mile from him; that during the last year he had seen him every few days walking in the road by witness' house; that he had never seen him walk with a limp or in a stooped position, and that he had not heard of defendant in error's claimed injuries until

after this case was tried. Plaintiff in error asserted in its motion for new trial that it had exercised due diligence to discover this testimony.

The record completely refutes the claim of diligence as made by plaintiff in error. Defendant in error's claim had been filed with plaintiff in error about a year before the case was tried, and it had sent its agent to his house to investigate his claim. Defendant in error talked frankly with the agent as to the nature and extent of his claim, and gave him the witnesses he expected to use. These new witnesses, by their statement, lived within a half mile of the home of defendant in error. Their fields adjoined. Any sort of diligence would have required the agent to interview these neighbors if defendant in error's claim of total permanent incapacity was to be controverted. Some of the circumstances testified to by these witnesses were denied by defendant in error. Thus he denied having a fight, as testified to by one of the witnesses, and in this he was corroborated by another party who was present. He denied the dancing, as testified to by the witnesses. Defendant in error also offered testimony impeaching the character of these four witnesses for truth and veracity.

On the facts, as stated, the trial court was justified in refusing the motion for new trial.

Affirmed.