## TEXAS EMPLOYERS' INS. ASS'N v. EVERS.

### No. 6161.

Court of Civil Appeals of Texas. Amarillo.

June 18, 1951.

Rehearing Denied July 16, 1951.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Merchant, Fitzjarrald & Pope, Amarillo, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment rendered in a workmen's compensation suit tried before a jury on special issues wherein appellee, M. W. Evers, as a result thereof recovered judgment in the trial court on December 22, 1950, against appellant, Texas Employers' Insurance association. The judgment awarded appellee compensation for a period of 300 weeks at a rate of $16.80 per week commencing on the date of injury as a result of 40% partial permanent incapacity of appellee due to an injury he received on September 25, 1949. Appellee received the said injury while he was employed by Columbian Carbon Company with appellant as the compensation insurance carrier.

Appellant perfected its appeal and predicates the same upon five points of error. It first charges that the trial court erred in awarding compensation to appellee for 300 full weeks without giving appellant credit for the time appellee continued to work for his same employer after his alleged injury at the same wage rate for approximately 52 weeks.

The record reveals that appellee was 47 years of age and weighed 230 pounds. He was married and had been employed by Columbian Carbon Company for a period of five years at the time he received his injury. He was then operating what was known as a pellet house at the carbon plant and a part of the plant machinery was located on an elevated platform with a stairway leading up to the platform. In the afternoon on the day of his injury, appellee had been upon the platform checking the machinery. When he started down the stairway his foot slipped about the fourth or fifth step from the bottom and one of his feet caught in some way on one of the steps causing him to fall forward into a heavy iron post at the bottom of the steps where his right shoulder hit the iron post with the force of all of his weight against it. He immediately became nauseated from the pain in his shoulder, sat down outside, got fresh air and cooled off before attempting to stir around further. He did little more work before quitting time as a fellow employee swept out and cleaned up the premises for him. After he quit he went immediately to see a doctor for an examination and treatment of his shoulder.

He was later examined and treated for some time by several different doctors, some of whom were paid by appellant and two of them testified at the trial. Doctor Walter VanSweringen testified that X rays made of appellee's right shoulder disclosed a separation at the acromion process and the clavicular articulation, and that such condition would cause pain on movement and would interfere with the stability of the shoulder girdle. He further testified that it would take an operation to improve the existing condition and even that may not effect a cure.

Doctor George T. Royse testified that he examined appellee as well as the X rays made by Doctor VanSweringen which revealed a crepitus on movement of the right shoulder, which means a roughness of the joint on motion. He further testified that there was a separation of the two bones that came together at the top of the right shoulder; that such was not a normal condition of the shoulder since the X ray shows that the bones were not in proper position and that they would thus remain without orthopedic treatment or possibly surgery to correct the condition. He further testified that such a condition, in his opinion, was producing impairment of the function of the shoulder joint.

Appellee testified that his doctor advised him to take off for treatment for a couple of weeks immediately after his injury but upon advising his doctor that his work was of such a nature that he could do it without injury to his shoulder, the doctor told him to continue with his work, if that be true, as the injury would not hurt any worse on the job than it would otherwise; that with the help of his fellow employees he continued on the job five days per week until October 1, 1950, enduring the discomforts and doing the work as best he could with one hand; and that he suffered pain continuously and had not been able to use his right arm because of the injured shoulder. Five of appellee's fellow employees who had likewise worked for long periods of time for Columbian Carbon Company testified concerning appellee's injuries and corroborated his testimony with reference to the help they gave him in performing his work after his injury.

The question here to be determined is whether or not appellee was entitled to receive compensation for his 40% partial permanent incapacity according to the jury verdict during the period of time of approximately 52 weeks when he also received his regular pay checks from his regular employer for his work under the existing conditions.

It has been many times held that the workmen's compensation law should be liberally construed in favor of the employee or the persons seeking compensation thereunder. It was so held in the case of Texas Employers Ins. Ass'n . v. Andrews, 130 Tex. 502, 110 S.W.2d 49. In the case of Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, writ dismissed, the court held that an employee subject to compensation otherwise in such cases should not be denied recovery unless the language of the compensation statute absolutely prohibits recovery.

In the case of Federal Underwriters Exchange v. Tubbe, Tex.Civ.App., 193 S.W.2d 563, 566, the court there stated that: "It is well settled that the fact that an injured employee resumes work after an injury does not preclude a finding of total, permanent disability, but merely presents a fact to be considered by the jury in passing upon the question of the accident and duration of the incapacity. Southern Underwriters v. Grimes, Tex.Civ.App., 146 S.W.2d 1058; Traders & General Insurance Co. v. Collins, Tex.Civ.App., 179 S.W.2d 525, and cases there cited."

In that case over the protest of the insurance company the court approved recovery for total and permanent incapacity of the injured party for a period of approximately one month while he worked and was paid his regular salary, while in the case at bar the injured party was only 40% partially disabled.

In the case of Traders & General Ins. Co. v. Daniel, Tex.Civ.App., 131 S.W.2d 276, 279, the court said: "Where an injured workman who goes out under stress of circumstances and labors, such effort does not, in our opinion, as a matter of law, deprive him of his right to compensation for total permanent incapacity."

In construing the Texas compensation law, Vernon's Ann.Civ.St. art. 8306 et seq., the court said in the case of Associated Indemnity Corporation v. Potts, 5 Cir., 164 F.2d 1002, 1007: "Although the law compensates for loss of earning capacity, the mere fact that appellee worked and earned money after being injured is not conclusive on the issue of his capacity to work: it is evidentiary only, to be considered along with the other evidence.

Traders & General Ins. Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130. The jury could, and evidently did, believe appellee's testimony that he worked after his injuries not because he was able to work but under compulsion of circumstances."

In the case of Zurich General Accident & Liability Ins. Co., Limited v. Johnson, 202 S.W.2d 258, 260, affirmed 146 Tex. 232, 205 S.W.2d 353, the Beaumont Court of Civil Appeals said: "It is the claimant's earning capacity and not his earnings which constitute the basis for compensation under our workmen's compensation law."

In that case the court approved compensation for total and permanent disability for a period of time including 5½ weeks while the injured party was engaged in work and drawing his usual salary and the court there stated that the record revealed he was not able to work but was working by reason of necessity.

In passing upon a very similar question concerning a specific or schedule injury in the case of Dohman v. Texas Employers' Ins. Ass'n., Tex.Civ.App., 285 S.W. 848, 850, the court there said: "The object of the law is to compensate injured employees for their incapacities resulting from their injuries, and, to effectuate its intent, it must be given a most liberal interpretation. The statute provides compensation to employees for permanent partial incapacity, whether they be engaged in the same or different employment, if the earning capacity be impaired or reduced. It is silent as to whether, notwithstanding the partial incapacity, the employee may obtain employment at the same or better wages than he received before receiving the injury, the compensation shall be given or refused. We think it was intended that he should be given the compensation provided for the disability, regardless of what wages he may receive after returning to work. To hold otherwise would be to read into the law a limitation that the statute does not provide. The fact that the injured employee may obtain temporary employment at the same or greater wages is not conclusive that his disability has ceased or that he is not disabled."

■ The evidence reveals that appellee was a willing worker together with other employees all of whom had worked for the same employer for several years and that, although he had been injured and was partially disabled by reason thereof, he felt the necessity of working and continued to work as best he could because of the kind consideration of his employer and the sympathetic assistance given him by his fellow employees. It appears to us that the trial court was justified in concluding that appellee had met the requirements of the compensation law for recovery and we find no language in the compensation law that precludes his recovery of compensation for the full period of time including the time he was employed and working after he received his injury. On the contrary, it appears to us that the foregoing cited authorities hold that an injured claimant is entitled to compensation in such a case notwithstanding the fact that he may have been employed as appellee was under the circumstances in the case at bar and may have been drawing his usual salary for a portion of the time he was drawing compensation.

■ In support of its first and foregoing assignment of error, appellant further complains that the trial court erred in excluding the tendered testimony of appellee with respect to his preference to take his salary check in lieu of compensation. The record reveals that appellee testified before the court only and in the absence of the jury, in effect, that he did not know how much compensation he would draw if he ceased work because of his injury but he knew such would be less than his usual wages had been and he preferred to stay on the job and draw his wages if he had to choose between the two and if the work was the same kind it had been. According to the record such evidence was never offered in the presence of the jury but offered only for the consideration of the court and in support of appellant's first contention made. Under the authorities previously cited and for the reasons previously stated it is our opinion that appellee was not required to make an election between the

two and the evidence offered was not material to any ultimate issue in the case.

 Appellant further charges that the trial court erred in failing to require a jury finding as to the commencement date of any incapacity of appellee. Such a finding is required in such cases if the matter is contested and an issue of fact is made but only in such event. The burden is upon the compensation claimant to establish the extent and duration of incapacity. But if such be conclusively established without any evidence being offered to the contrary, usually there is no controversy about the matter and therefore no fact issue for the jury. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W. 2d 904; Traders & General Ins. Co. v. Garry, Tex.Civ.App., 118 S.W.2d 340, affirmed 135 Tex. 290, 143 S.W.2d 370; Green v. Ligon, Tex.Civ.App., 190 S.W.2d 742; Texas Employers' Ins. Ass'n v. Thames, Tex.Civ.App., 236 S.W.2d 203.

██ In the case at bar the jury found as a result of competent evidence that appellee sustained injury while in the course of his employment on September 25, 1949, from which injury he sustained 40% partial permanent incapacity. The evidence reveals that immediately following his injury appellee was under medical treatment of various doctors for some time. The uncontroverted evidence conclusively established that appellee's partial incapacity began on the date of his injury on September 25, 1949. No evidence was offered to the contrary and the issue was not therefore controverted. As a result of the jury findings on the other issues mentioned and the uncontroverted evidence concerning appellee's partial incapacity, it is our opinion that a failure to require a jury finding as to the commencement date of appellee's partial incapacity was not error and it was so held in the Garry case herein cited, which case had a similar factual situation.

Appellant further complains that the trial court erred because of its refusal to grant it a new trial upon the grounds of newly discovered evidence. Appellant attached to its motion for a new trial affidavits of Dan Glaxner, district superintendent of Columbian Carbon Company, appellee's employer, and James C. Sanders, an attorney for the said company, concerning conversations they each recently had separately with appellee about his being reinstated as an employee of the said company. Both affiants asserted in part that appellee had said in substance to each of them subsequent to the date of the trial court's judgment that he had a release from his doctor authorizing him to go back to work and he was ready to be reinstated as an employee of Columbian Carbon Company. However, affiant Sanders further stated, in effect, that appellee also told him that his right shoulder was still partially impaired.

Appellee resisted appellant's motion for a new trial and tendered an affidavit made by appellee himself in rebuttal to some of the assertions made by appellant's said affiants. Appellee there denied having asserted to either of appellant's affiants that his shoulder was well but on the contrary he said he told them his shoulder was not any better and that he could not then do the regular work but that he could go back on the job and do the kind of work he had previously done with the assistance of other employees who helped him after his injury. Upon a hearing of appellant's motion for a new trial on February 2, 1951, by agreement of the parties these affidavits, together with some others, were admitted as evidence. Appellee also testified in person at the said hearing. He there testified that his right shoulder had not improved and that he still was not able to engage in work that required the use of his right arm but he could do light work such as he had done for Columbian Carbon Company after his injury with the help of other employees as they had previously done after he was injured. The alleged newly discovered evidence that appellant urges as grounds for a new trial consisted of the alleged statements appellee had made to affiants Glaxner and Sanders to the effect that his shoulder had improved at least to the extent that he had been released by his doctor and was authorized and ready to return to work. These matters were controverted before the trial court

upon a hearing of appellant's motion for a new trial and the question was there resolved against granting a new trial.

 It has been many times held that a party seeking a new trial on the grounds of newly discovered evidence must, among other requirements, show that the alleged newly discovered evidence is not cumulative; that it is so material that it would probably produce a different result if a new trial were granted and that the complaining party exercised proper diligence in determining the issue raised, if it were then known, at the original trial. These matters are then left to the sound discretion of the trial court whose action in the matter will not be disturbed on appeal unless it is shown that the trial court abused its discretion. Texas Employers Ins. Ass'n v. Moser, Tex.Civ.App., 152 S.W.2d 390; 31 Tex.Jur. 107, Section 95; Employees Lloyds v. Schott, Tex.Civ.App., 183 S.W.2d 262; Allen v. Texas & N. O. R. Co., Tex. Civ.App., 70 S.W.2d 758; and Snow v. Harding, Tex.Civ.App., 180 S.W.2d 965. The last cited case further holds that the alleged newly discovered evidence must do more than merely seek to impeach the testimony of a litigant or some other witness given at the original trial.

 In the case at bar the record reveals that appellee offered satisfactory evidence concerning the extent and duration of his injury at the original trial and that appellant did not offer any witness to rebut these or any other issues heard at the original trial. It appears that the alleged newly discovered evidence would be cumulative only and that it seeks to impeach or discredit the evidence of appellee and other witnesses given at the original trial. It is therefore our opinion that the trial court did not abuse its discretion in holding that appellant failed to meet the foregoing essential requirements in its attempt to show grounds for a new trial because of newly discovered evidence. Galveston, H. & S. A. Ry. Co. v. Waldo, Tex.Civ.App., 77 S.W.2d 326.

Appellant further charges that appellee's counsel was guilty of "erroneous argument" and as a basis for such presents its bill of exception number one. The approved bill of exception reveals that in making his argument before the jury, appellee's counsel, in referring to the previous argument made by appellant's counsel, said: "Now, he says this employer (referring to Columbian Carbon Company) is an interested party. Well, I don't know how he could be interested, except one way. He pays the premium, evidently, for some insurance—what for?—to cover men who are hurt. Now that is the only thing I can conceive of this employer being an interested party—".

To this argument appellant's counsel objected on the grounds that such argument was improper because appellee's former employer had a greater interest in the case than that of having merely paid premiums on insurance and for the further reason that the issues to be determined were the length and percentage of incapacity and such argument of appellee's counsel was immaterial. The objection was overruled by the trial court to which action appellant preserved its exception.

 Appellee's counsel charged, in effect, in his said argument that appellant's counsel had previously asserted that appellee's employer was an interested party to the suit, in which event appellee's counsel had a right to reply to such argument and to assert his views concerning the matter as reflected by the record. According to the record the said employer was not named as a party to the suit but it was named merely as appellee's employer. On cross-examination appellant's counsel had proved before the jury by appellee as a witness that he knew his employer had compensation coverage. It therefore appears that it was not error for appellee's counsel to refer to the insurance coverage in his argument. It further appears that appellee's counsel had a right, and it has been many times so held, to reply to arguments made by his adversary and in doing so to discuss any matters discussed by his adversary. If such was error, it was an invited error and it does not constitute a reversible error. Highway Ins. Underwriters v. Spradlin, Tex.Civ.App., 190 S.W.

2d 181; Texas Employers' Ins. Ass'n v. Wells, Tex.Civ.App., 207 S.W.2d 693; 41 Tex.Jur. 798, Section 75.

A careful examination of the record and assignments of error reveals no reversible error. Appellant's points are all therefore overruled and the judgment of the trial court is affirmed.