**MARYLAND CASUALTY COMPANY, Appellant,**

v.

**William A. GOETZ, Appellee.**

No. 6959.

Court of Civil Appeals of Texas.

Amarillo.

June 20, 1960.

Rehearing Denied Sept. 6, 1960.

Simpson, Adkins, Fullingim & Hankins, Amarillo, Richard E. Stokes, Jr., Amarillo, of counsel, for appellant.

R. C. Hamilton, Amarillo, for appellee.

DENTON, Chief Justice.

This is a Workmen's Compensation case. The appellee, William A. Goetz, was an employee of Floyd Richards as a carpenter. While in the course of his employment the

appellee inhaled paint fumes on July 1st and 2nd of 1958. As a result of his exposure to paint fumes, Goetz was placed under the treatment of a doctor and was hospitalized for a period of 6 days. There he was given 6 blood transfusions. The doctor testified that Goetz suffered from gastritis, which was described as an inflammation of the lining of the stomach. This caused an anemic condition which required the blood transfusions. Appellee remained in a weakened condition for several weeks, and was unable to return to work until the latter part of September of that same year. He worked more or less steadily in the same type of carpenter work until March, 1959. At that time he was again exposed to paint fumes in his own home. This again caused an attack of gastritis, and he was again hospitalized for some 5 days for similar treatment as previously administered. He returned to work after this treatment, and the undisputed evidence shows that he was working at the time of the trial.

It will be noted that plaintiff's petition alleged a general injury to the body of the appellee, plaintiff below. The special issues which were submitted to the jury were based on this theory rather than on the theory of an occupational disease. The record reflects that the appellant made no exceptions to the pleadings of plaintiff's petition.

In response to the special issues submitted the jury found: Goetz was totally incapacitated for 12 weeks as a result of the accidental injury beginning July 1, 1958, and that he was permanently partially incapacitated for 300 weeks beginning October 1, 1958. The jury also found that there was a $25 difference between his average weekly wages before the injury, and his average weekly wage earning capacity during the existence of the partial incapacity.

The parties stipulated that Goetz's average weekly wage rate was $117.00; that the defendant insurance company had paid Goetz a total of $210.00, and that there was no issue as to wages to be submitted to the jury. Based on the stipulations and jury

findings, the trial court entered judgment for Goetz to recover $35.00 per week for 12 weeks beginning July 1, 1958 and $15.00 per week for 300 weeks, giving credit to the insurance company for the sum of $210.00 previously paid. It is from this judgment that the appellant insurance company duly perfected this appeal.

■ By appellant's points of error 1, 2 and 5 it is contended that the verdict of the jury and the judgment entered were not supported by any evidence and in the alternative that the verdict and judgment entered were against the overwhelming weight of the evidence. We are of the opinion there is ample evidence to support the findings that Goetz was totally incapacitated for a period of 12 weeks and permanently partially incapacitated for 300 weeks. Appellant offered no testimony to dispute the fact the accidental injury was received by Goetz on the date in question. Neither did appellant offer any medical testimony to refute the medical testimony offered by the appellee. The appellant did offer a moving picture showing appellee working on a job some few weeks prior to the trial. However, appellee did not deny engaging in such work. Some 11 or 12 weeks after becoming incapacitated, the appellee did return to work as a carpenter for another employer, but he was not able to work overtime or on Saturdays as the record reveals he consistently did before July 1, 1958. He lost some time from work until about Christmas of 1958. In the Spring of 1959, he was again exposed to paint fumes and his condition required further hospitalization and blood transfusions. The doctor testified Goetz had developed a sensitivity to paint fumes, and that this developed into an allergy which would probably continue the rest of his life.

Even though Goetz was employed much of the time after his injury, he was not able to work the long hours he had previously worked, and he was not strong enough to do some of the more difficult tasks often required of carpenters. Certainly the testi-

mony was clear that Goetz would not be able to work in the vicinity of fresh paint. This is undoubtedly a hindrance to one engaged in this trade.

■ Under the Workmen's Compensation Act, compensation is paid for diminution of earning capacity, not for loss of earnings, and the fact that an injured employee works and earns wages after his injury is generally not conclusive on the issue to obtain and retain employment. Texas Employers' Ins. Ass'n v. Taylor, Tex.Cix. App., 276 S.W.2d 901; Texas Employers' Ins. Ass'n v. Evers, Tex.Civ.App., 242 S.W.2d 906; Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805; Texas Employers' Ins. Ass'n v. Goforth, Tex.Civ.App., 307 S.W.2d 610. After reviewing the record, we conclude the evidence supports the findings of the jury that appellee suffered the disability stated above.

■ Appellant's third point of error complains that the verdict and judgment entered are contrary to law and no applicable law of the State will support the judgment. This purported point of error is too general and does not sufficiently direct the attention of the Court to the error relied upon. Rule 418, Vernon's Ann.Civ.Rules. Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331; Novita Oil Co. v. Smith, Tex.Civ.App., 247 S.W.2d 151.

■■ In points of error 4 and 10 it is the appellant's contention the trial court erred in admitting into evidence testimony of Goetz's earning overtime wages of $25 to $40 weekly prior to the alleged injury. It is appellant's position that this was error in light of the stipulation of the parties that appellee's average weekly wage rate was $117. The stipulation was made outside the hearing of the jury, and it further stated that "There is no issue as to wages to be submitted to the jury." It obviously was made for the purpose of eliminating the necessity of submitting issues to the jury on the appellee's wage rate. The stipula-

tion did not include the words "wages before the accident" as the appellant seems to contend. The testimony which the appellee offered concerning his overtime work before the accident was offered without objection by the appellant. We therefore hold that appellant's failure to object to the testimony when offered constitutes a waiver. Campbell v. La Due, Tex.Civ.App., 273 S.W.2d 450. Under the better reasoned cases, we think it proper that even though a wage rate is stipulated, a party may show the wages earned before and after an injury in order to enlighten the jury concerning the party's earning capacity. Choate v. American Motorist Ins. Co., Tex.Civ.App., 323 S.W.2d 188.

■ It is appellant's further position that due to the fact that appellee was employed after his injury and earned wages substantially as high as before the injury, he was cut off as a matter of law from being awarded diminished earning capacity. It is our opinion the cases do not support this contention. The fact that an injured employee works and earns the same or more money after his injury is not conclusive on the issue of his incapacity to perform labor, but is evidentiary only. Texas Employers' Ins. Ass'n v. Evers, supra; American General Ins. Co. v. Bailey, Tex.Civ.App., 287 S.W.2d 290; Traders & General Ins. Co. v. Vaughn, Tex.Civ.App., 317 S.W.2d 800. We therefore overrule appellant's points 4 and 10.

The next two points of error we shall consider deal with a requested special issue concerning the average weekly earning capacity of the appellee. Appellant's requested special issue read as follows:

"What sum of money do you find from a preponderance of the evidence constitutes the average weekly wage earning capacity of the plaintiff, William A. Goetz, during the existence of the period of partial incapacity, if any, you have found as a result of the accident in question?"

This requested issue was refused by the trial court, and instead submitted the following special issue:

"What do you find from a preponderance of the evidence to be the difference between the average weekly wages before the injury, if any, and his average weekly wage earning capacity during the existence of such partial incapacity, if any?"

 It is appellant's position that in as much as the appellee's average weekly wage rate was stipulated it was error to inquire of the jury the difference of the average weekly wage and earning capacity. Even though the average weekly wage rate was stipulated in the record as being $117, evidence of this weekly wage rate was brought out in the testimony, and testimony of appellee working overtime prior to the injury was offered without objection. We think it is clear that the evidence amply supported the issue as submitted. The issue as submitted used language in the exact wording of the applicable Statute, Article 8306, Sec. 11, as amended, and we therefore hold that the trial court correctly submitted the special issue in question. Although we have been cited no case rendered after the 1957 amendment to Section 11 of Article 8306 specifically approving the language of the special issue here, the following cases approve the general language used in the special issue under consideration: American General Ins. Co. v. Bailey, supra; Traders & General Ins. Co. v. Robinson, Tex.Civ.App., 222 S.W.2d 266, writ refused.

 Appellant complains of the admission into evidence of testimony of appellee's second attack of gastritis in March, 1959. This attack was prompted by exposure to paint at appellee's home some 8 months after suffering the first attack on the job. Appellant contends there was a variance between the allegations and the proof offered. Pointing out the recovery was based on the theory of an accidental injury while this proof merely showed a recurrence of the original incapacity. Appellee's petition alleged a general injury to the body, and the record reveals no exception was taken to the evidence. The only medical witness that was offered at the trial testified that once a person was afflicted with gastritis he is susceptible to being allergic to the offensive material for the remainder of his life. We are therefore of the opinion that the testimony complained of was clearly admissible as an evidentiary matter on the question of appellee's impaired earning capacity in the future.

After carefully reviewing the record, we are of the opinion that the trial court committed no reversible error and the judgment of the trial court is affirmed.